UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO GUTIERREZ, ) | 1:09-CV-01948-AWI DLB HC |
| ) | |
| Petitioner, ) | FINDING AND RECOMMENDATION |
| ) | REGARDING PETITION FOR WRIT OF |
| v. ) | HABEAS CORPUS |
| ) | |
| MIKE MCDONALD,, ) | |
| ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| Respondent. ) | DAYS |

Petitioner Eduardo Gutierrez ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

On October 23, 2006, a jury convicted Petitioner of two counts of wilful, deliberate, and premeditated attempted murder (Cal. Pen. Code, §§ 187, subd. (a), 664)[1] with a single enhancement for using a firearm causing great bodily injury. (§ 12022.53, subd. (d)). See Answer, Exh. A, (Doc. 14), Court of Appeal's July 16, 2007 Decision at 2. The trial court sentenced Petitioner to two consecutive life sentences with the possibility of parole for the attempted murders plus 25 years to life for the firearm enhancement. Id. at 2.

On July 16, 2007, in its opinion following Petitioner's direct appeal, the California Court of Appeal affirmed the judgment. See Answer, Exh. A. Petitioner filed a petition for review in the

---

[1] Unless otherwise indicated, all statutory references are to the California Penal Code.

California Supreme Court on August 13, 2007. See Respondent ("Resp't") Lodged 4. The California Supreme Court denied the petition for review on September 19, 2007. See Resp't Lodged 5.

On August 22, 2008, Petitioner filed a Petition for Writ of Habeas Corpus in the Kern County Superior Court. See Resp't Lodged 6. On October 27, 2008, the Kern County Superior Court denied the petition. See Answer, Exh. B. On December 18, 2008, Petitioner filed a Petition for Writ of Habeas Corpus in the California Court of Appeal. See Resp't Lodged 7. On January 8, 2009, the California Court of Appeal denied the petition. See Resp't Lodged 8.

On January 29, 2009, Petitioner filed a Petitioner for Writ of Habeas Corpus in the California Supreme Court. See Resp't Lodged 9. On July 8, 2009, the California Supreme Court denied the Petition.[2] See Resp't Lodged 10.

Petitioner filed the instant petition for writ of habeas corpus in the United States District Court, Eastern District of California on July 22, 2009. Respondent filed an answer on March 11, 2010.

**Factual Background**

The Court adopts the California Court of Appeal's summation of the facts surrounding Petitioner's crime and conviction:

> Around 1:00 a.m. on July 28, 2006, Selso Plancarte and taxi-cab driver Regulo Medina were playing cards at the El Paraiso bar outside Bakersfield when [Petitioner] entered. Noticing [Petitioner] did not have any money, Plancarte bought two of [Petitioner's] drinks, but explained he would not buy him any more. [Petitioner] told Plancarte, "that's fine," and offered to sell him a telephone. When Plancarte declined, [Petitioner] leaned in and said, "don't be afraid."
>
> [Petitioner] finished his beer and left. Watching on a video monitor from an office, the owner of the bar, Jean-Pierre Goyenetche, saw someone push [Petitioner] outside. Medina then left the bar to pick up a taxi customer and saw [Petitioner] slash a tire on Plancarte's car. [Petitioner] ran away and Medina returned to the bar to tell Plancarte. Medina gave Plancarte a ride in his taxi and they went to search for [Petitioner].
>
> Plancarte and Medina caught up with [Petitioner] at a bridge approximately a block and a half from the bar. [Petitioner] and Plancarte got into a fight and at some point, [Petitioner's] wallet fell out of his pocket. Plancarte picked up the wallet, returned to the bar, and gave it to Goyenetche.

---

[2] The California Supreme Court denied the petition with citations to In re Dixon, 41 Cal. 2d 756 (1953) ("Dixon") and In re Lindley, 29 Cal. 2d 709 (1947) ("Lindley").

>Goyenetche called the sheriff and waited outside for assistance. While waiting, he took a shovel out of Plancarte's trunk and started weeding. Meanwhile, Medina returned from driving his customer. About 20 minutes later, Goyenetche saw [Petitioner] approach and thought he looked "crazy," walking "back and forth." Medina noticed [Petitioner] had changed his shirt. [Petitioner] then pulled a .22 caliber rifle out of his pants and said in Spanish, " 'I told you I was coming back.' " [Petitioner] aimed the gun at Goyenetche's chest and pulled the trigger. Goyenetche heard the sound of a "click." Plancarte witnessed the event and estimated [Petitioner] was only 3 to 4 feet from Goyenetche.
>
>Medina took the shovel from Goyenetche and swung it at [Petitioner], hitting either the rifle or [Petitioner's] arm. Medina ran away and tried to defend himself with the shovel as he saw [Petitioner] loading the rifle. [Petitioner] fired several shots and Medina felt bullets strike his hand and his back before falling to the ground. [Petitioner] caught up to Medina and held the gun less than a foot from Medina's face and shot him in the cheek. Medina was able to hit [Petitioner] with the shovel before [Petitioner] fled.
>
>Preliminary hearing testimony of [Petitioner's] wife, Maria Anina Gallardo Raya, was read into the record because she was unavailable. She recalled [Petitioner] came home drunk on the night of the shooting, changed his shirt, and slid his shotgun down the leg of his pants. They left together and went to the bridge to look for [Petitioner's] wallet. Raya and [Petitioner] borrowed a flashlight from some other people in the area and asked if they had seen a wallet. [Petitioner] left as Raya continued searching for the wallet; almost immediately thereafter, she heard two gunshots. Raya could not see the bar very well from her location. [Petitioner] walked back towards her and shortly thereafter the police drove up and arrested [Petitioner].
>
>Arresting officer Kern County Deputy Sheriff Ian Chandler noticed [Petitioner] smelled of alcohol and appeared extremely intoxicated. The deputy seized the rifle from [Petitioner's] pant leg and a case containing 80 .22 caliber rifle bullets from his pocket.

See Answer, Exh. A.

## Discussion

### I.   Jurisdiction and Venue

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition challenging a conviction is proper in the judicial district in which the petitioner was convicted. 28 U.S.C. § 2241(d).

As Petitioner asserts that he is in custody pursuant to a State conviction which violated his rights under the United States Constitution, the Court has jurisdiction over this action. 28 U.S.C. §

2254(a).  Petitioner was convicted in Kern County, California, which is within the Eastern District of California, and thus venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(d).

## II.     Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Id. (quoting Williams, 529 U.S. at 412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Id.  Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  Id. at 72 (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue. . . . This does not mean that Ninth Circuit case law is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more

than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

In the instant petition, Petitioner raises two grounds for relief. Petitioner raised Ground One through successive writs of habeas corpus with the Kern County Superior Court, the California Court of Appeal and the California Supreme Court. The state superior court denied relief on procedural grounds; the state appellate court summarily denied relief without citation to authority; and the state supreme court denied relief on procedural grounds only. See Answer, Exh. B; Resp't Lodged 7 & 8. Because this claim was rejected by the California Supreme Court on procedural grounds rather than on the merits, a de novo review of Ground One is therefore required. Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir.2004) ("De novo review, rather than AEDPA's deferential standard, is applicable to a claim that the state court did not reach on the merits." (citation omitted)); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citations omitted); see also Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004) (holding that AEDPA phrase "adjudicated on the merits" means that state court has reached decision "on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits").[3]

---

[3] Respondent argues procedural bar defeats Petitioner's claim at Ground One for two reasons: (1) because the Kern County Superior Court denied Petitioner's claim as procedurally defaulted with citations to Dixon and In re Waltreus (1965) 62 Cal. 2d 218, 225; and (2) because the California Supreme Court denied habeas relief with citations to Dixon and Lindley. See Answer at 7-8. In the interest of judicial economy, the Court has discretion to reach the merits of a Petitioner's claim rather than consider the procedural bar issue. See Lambrix v. Singletary, 520 U.S. 518, 524-35 (1997); Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"). Here, as the procedural bar argument is comparatively more complicated, the Court exercises its discretion to consider the grounds for relief on the merits.

Petitioner raised Ground Two on direct appeal to the California Court of Appeal, which affirmed the judgment in a reasoned opinion. See Resp't Lodged 1. Petitioner's claim (at Ground Two) was then raised in a petition for review to the California Supreme Court, which summarily denied review. See Resp't Lodged 5. The California Supreme Court, by its "silent order" denying review is presumed to have denied the claim for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Therefore, the Court "look[s] through" this decision to the last reasoned decision, in this case, that of the California Court of Appeal, and analyzes whether the state court's decision was an objectively unreasonable application of federal law. See Nunnemaker, 501 U.S. at 803-804.[4]

### III. Review of Petitioner's Claims

Petitioner's Ground One asserts that there was insufficient evidence to support the convictions for attempted murder. See Petition at 5. In Ground Two Petitioner contends the trial court erred in denying his Marsden Motions. See Petition at 5.

### A. Ground One: Insufficient Evidence

Petitioner contends his due process rights and rights to a fair trial were violated as there was insufficient evidence in support of his convictions for attempted murder.[5] More specifically, he argues that because he acted in the "heat of passion" and was intoxicated, there was insufficient evidence that he possessed "malice aforethought" necessary to be found guilty of attempted murder.[6]

---

[4] The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Here because the Court of Appeal did not address the federal constitutional issue raised in Petitioner's Ground Two, this Court will independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

[5] In California, an attempted murder conviction requires "sufficient evidence of the intent to commit the murder plus a direct but ineffectual act towards its commission." People v. Morales, 5 Cal.App. 4th 917, 925 (citing People v. Dillon, 34 Cal.3d 441, 452, (1983)); see also People v. Lee, 31 Cal. 4th 613, 623-624 (2003) (stating that, "[a]ttempted murder requires specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing").

[6] Petitioner argues that before completing the charged offenses, he was provoked into a "heat of passion" during his altercation with Mr. Plancarte under the bridge. According to Mr. Medina's testimony at trial, 30 minutes or so passed from the time of the altercation under the bridge to Petitioner's return to the bar. See RT at 256. Shortly after his return to the bar, Petitioner completed the attempted murders. See RT 257-258.

See Petition at 4. Based on his inability to form the requisite mental state, Petitioner contends he should have been found guilty of attempted voluntary manslaughter. See Petition at 4.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 314, (1979) (quoting In re Winship, 397 U.S. 358, 364, (1970)). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (a petition for habeas corpus may only be granted where the state court's application of Jackson was objectively unreasonable). Thus, a state prisoner is only entitled to habeas relief on this ground where no rational trier of fact could have found proof beyond a reasonable doubt based on the evidence adduced at trial. Jackson, 443 U.S. at 324; see McDaniel v. Brown, --- U.S. ----, ----, 130 S.Ct. 665, 666, --- L.Ed.2d ----, ---- (2010) (per curiam).

Pursuant to the Supreme Court's holding in Jackson, the test to determine whether a factual finding is fairly supported by the record is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see Lewis v. Jeffers, 497 U.S. 764, 781 (1990); Bruce v. Terhune, 376 F.3d 950, 956-57 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 319) (stating "Jackson cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution'"). Where the record supports conflicting inferences, a federal habeas court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. Finally, a federal habeas court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

This Court's review of the record reveals that the trial court instructed the jury on Penal Code Sections 187, subd. (a), and 664, "Attempted Murder" with CALJIC 8.67 which in relevant part reads as follows:

It is also alleged in Counts 1 and 2 that the crime attempted was willful, deliberate,

> and premeditated murder. If you find the defendant guilty of attempted murder, you must determine whether this allegation is true or not true.
>
> "Willful" means intentional. "Deliberate" means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. "Premeditated" means considered beforehand.
>
> If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder. . . .

See Reporter's Transcript ("RT") at 407; see also Clerk Transcript ("CT") at 95.

The trial court also the jury with CALJIC 8.43 which provides an objective standard for evaluating whether a "sudden quarrel" or "heat of passion" continues to influence a defendant's state of mind following a lapse of time:

> To reduce an attempted killing upon a sudden quarrel or heat of passion from attempted murder to attempted voluntary manslaughter, the attempted killing must have occurred while the person was acting under the direct and immediate influence of the quarrel or heat of passion. Where the influence of the sudden quarrel or heat of passion has ceased to obscure the mind of the accused, and sufficient time has elapsed for angry passion to end and for reason to control his conduct, it will no longer excuse express malice, and reduce the attempted killing to attempted voluntary manslaughter. The question, as to whether the cooling period has elapsed and reason has returned, is not measured by the standard of the accused, but the duration of the cooling period is the time it would take the average or ordinarily reasonable person to have cooled the passion, and for that person's reason to have returned.

See RT at 411-412; see also CT at 101.[7]

Petitioner's claim lacks merit for a number of reasons. First, as noted by the Kern County Superior Court, whether a "cooling off" period, sufficient such that "a reasonable person to have cooled the passion, and for that person's reason to have returned," is "a question of fact for the jury to decide." See Answer, Exh. B. Thus, even presuming the substance of Petitioner's factual contentions, a federal habeas court "faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Davis v. Woodford, 384 F.3d 628, 639 (9th Cir. 2004). Additionally, the jury is presumed to have followed

---

[7] Similarly, the trial court instructed the jury with CALJIC 4.21 regarding voluntary intoxication which stated: "[i]f the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in deciding whether defendant had the required specific intent or mental state." See RT at 414; see also CT at 105.

the instructions cited above.  <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).

     Second, in the instant petition, Petitioner's own version of the facts contradicts his contentions that his criminal conduct was product of "rash" behavior or "without deliberation and reflection."  <u>See</u> Petition at 10.  According to Petitioner after he was attacked and though acting under the "heat of passion," he "retrieved his weapon for protection" and "instead of returning directly to the bar" he and his wife returned to the area of the attack to search for his wallet for approximately fifteen minutes.  <u>See</u> Petition at 11.  Petitioner's statements regarding his conscious decision to retrieve his weapon for self-defense and his admitted search for his wallet are inconsistent with his theory that he suffered from an obscured mind either as a result of a "heat of passion" or from voluntary intoxication.  <u>See</u> Petition at 10-12.  Additionally, Petitioner argument that he was provoked by his altercation with Mr. Plancarte under the bridge, fails to justify or mitigate the violent conduct taken against his victims, Mr. Goyenetche and Mr. Medina.

     Finally, the evidence at trial was clearly sufficient to satisfy the elements of the attempted murder charge.  Both victims and Mr. Plancarte, provided consistent eyewitness testimony regarding Petitioner's actions in completing the attempted murders.  <u>See</u> RT at 133-134, 163-165, 194-196, 198-199, 246-247.  Further, Mr. Medina testified that as he attempted to run away from Petitioner, Petitioner shot and hit Mr. Medina causing him to fall to the ground.  <u>See</u> RT at 247-248.  Next, Petitioner stood over Mr. Medina and fired the rifle at close range hitting Mr. Medina in the face. <u>See</u> RT 248-249.  Finally, according to testimony adduced at trial, Petitioner stated to both of his victims:  "I told you I was coming back."  <u>See</u> RT at 133.  Based on these facts, the jury could reasonably have determined that:  (1) Petitioner had the specific intent to kill the victims; and (2) that a sufficient period of time had elapsed to allow Petitioner to "cool off" so that, even assuming Petitioner was provoked by the earlier altercation, the crime committed was attempted murder and not attempted voluntary manslaughter.  Because Petitioner fails to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or an "unreasonable determination of the facts in light of the evidence," the claim should be rejected.  28 U.S.C. § 2254(d).

Case 1:09-cv-01948-AWI-DLB   Document 19   Filed 05/06/11   Page 11 of 14

B. **Ground Two: Denial of Petitioner's <u>Marsden</u> Motions**

Petitioner states that on October 10, 2006 and then again on October 18, 2006, that the trial court "erroneously denied" his <u>Marsden</u> Motion. In his first <u>Marsden</u> hearing, Petitioner's "main complaint about his attorney was . . . his attorney's failure to locate two witnesses who may have seen the fight between petitioner and the others underneath the bridge." <u>See</u> Petition at 17. Responding to these statements at hearing, Petitioner's defense counsel explained his investigator had been unable to locate these witnesses. <u>See</u> Petition at 17; <u>see also</u> RT at 6. Petitioner also complained that he had asked his counsel to provide him with police reports translated into Spanish but that his counsel had not provided these reports. <u>See</u> Petition at 18. Again defense counsel responded stating that Petitioner had only recently asked for the reports and that it would not have been possible for him to translate the reports given the time constraints. <u>See</u> RT at 9.

Regarding Petitioner's second <u>Marsden</u> Hearing held on October 18, 2006, Petitioner argues he experienced a breakdown in communications with his attorney because according to Petitioner:

> . . . defense counsel did not take the time or make the effort to adequately communicate with Petitioner before the pretrial conference of October 6, 2006. On the pretrial conference date, one prosecutor made [Petitioner] the offer of 19 years to life, but [Petitioner] apparently rejected that offer. That offer was withdrawn by another prosecutor, who then increased the offer to 33 years to life by October 16, 2006.

<u>See</u> Petition at 22.

The California Court of Appeal addressed Petitioner's <u>Marsden</u> claim in a reasoned decision on direct review:

> [Petitioner] failed to establish that his counsel's representation was inadequate to the point that it substantially impaired his right to effective assistance of counsel at either of the two *Marsden* hearings. As explained by defense counsel, his investigator made a good faith attempt to locate the potential witness who may have seen the initial confrontation at the bridge between [Petitioner] and Plancarte, but the investigator was unable to find them. Moreover, defense counsel considered the potential witnesses were only minimally relevant given their absence at the time of the shootings. (See *People v. Lucky* (1988) 45 Cal. 3d 259, 281 [difference of opinion between defendant and attorney over trial tactics does not mandate new representation].) As to obtaining [Petitioner's] police records, defense counsel explained [Petitioner] only recently asked for them and having them translated into Spanish given the time constraints would be "impossible." (See *People v. Hart* (1999) 20 Cal. 4th 546, 600, 604 [failure to provide defendant with police reports not sufficient grounds for *Marsden* motion where it could have compromised case].) While [Petitioner] may not have understood why the 19-year prison term offer had been withdrawn by the prosecutor, there is no indication counsel's representation was

U.S. District Court
E. D. California

11

|   |   |
|---|---|
| 1 | inadequate or that [Petitioner] and his counsel had become embroiled in such an irreconcilable conflict that ineffective representation was likely to result. The trial court did not abuse its discretion in denying [Petitioner's] *Marsden* motion. |
| 2 |   |

3  See Answer, Exh. A.

4  It has been clear since Gideon that an indigent state prisoner is entitled to counsel to represent

5  him at every critical stage of the proceedings under the Sixth Amendment to the United States

6  Constitution. Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963). In addition, the Sixth

7  Amendment guarantees a defendant a right to conflict-free representation. See Garcia v. Bunnell, 33

8  F.3d 1193, 1195 (9th Cir. 1994). While the Sixth Amendment guarantees criminal defendants the

9  right to effective representation, indigent defendants do not have a constitutional right to be

10 represented by their counsel of choice. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617,

11 625 (1989). Nor does the Sixth Amendment guarantee a "meaningful attorney-client relationship."

12 Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (internal quotation marks omitted). "[T]he essential aim

13 of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather

14 than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."

15 Wheat v. United States, 486 U.S. 153, 159 (1988). "[T]here is no automatic right to a substitution of

16 counsel simply because the defendant informs the trial court that he is dissatisfied with appointed

17 counsel's performance." Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir. 1990).

18 In reviewing a federal habeas claim based on the denial of a substitution motion, "the

19 ultimate constitutional question the federal courts must answer" is whether the state trial court's

20 disposition of the motion violated a petitioner's constitutional rights because the conflict between the

21 petitioner and appointed counsel "had become so great that it resulted in a total lack of

22 communication or other significant impediment that resulted in turn in an attorney-client relationship

23 that fell short of that required by the Sixth Amendment." Schell v. Witek, 218 F.3d 1017, 1026 (9th

24 Cir. 2000). As explained by the Ninth Circuit: "[t]he test for determining whether the trial judge

25 should have granted a substitution motion is the same as the test for determining whether an

26 irreconcilable conflict existed. The court must consider: (1) the extent of the conflict; (2) whether the

27 trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the

28 motion to substitute counsel." Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir.2005).

The state court's decision was neither "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). As set forth above, the trial court held adequate and fair hearings for Petitioner's motions to substitute counsel. At both hearings, the court allowed Petitioner to explain his complaints about counsel and tested the validity of those complaints by questioning counsel. See RT 4-9, 16-19.

Moreover, Petitioner's disagreements with his counsel differs sharply from those cases where irreconcilable conflicts have been found. The essence of Petitioner's complaints regarding his counsel relate to events or conduct for which his counsel was not responsible. For example as noted by the Court of Appeal, defense counsel's investigator "made a good faith attempt to locate" the potential witnesses but the investigator was unable to find them. See Answer, Exh. A. at 6. Additionally, given the time constraints, Petitioner's counsel explained that it would have been "impossible" to translate and produce Petitioner's requested documents. See RT at 9. Finally, it is clear that defense counsel had no part in the prosecution's withdrawal of its earlier 19-year prison term offer. See RT 16-19. Additionally, the undersigned agrees with the Court of Appeal's statement that "there is no indication [defense] counsel's representation was inadequate. . . . See Answer, Exh. A. at 7.

Nothing in the record indicates that Petitioner and counsel could not or did not communicate, or that counsel did not consider Petitioner's wishes in formulating a litigation strategy. Breakdowns in the attorney-client relationship that rise to the level of a conflict of interest warranting substitution of counsel have been marked by (1) "a complete communications breakdown," see United States v. Nguyen, 262 F.3d 998, 1004-05 (9th Cir. 2001); (2) an attorney's "open opposition" to his client, including "bad language and threats" to provide substandard performance if the client persisted in demanding to go to trial, that left the defendant "effectively unrepresented," United States v. Adelzo-Gonzalez, 268 F.3d 772, 779 (9th Cir. 2001); or (3) "an atmosphere of mistrust, misgivings and irreconcilable differences." United States v. Moore, 159 F.3d 1154, 1159 (9th Cir. 1998). Petitioner may have been dissatisfied with the results of his counsel's investigative efforts or disappointed that the prosecutor withdrew the more favorable offer but these events did not create an

irreconcilable conflict warranting removal of counsel.

After independently reviewing the record, the undersigned finds that the state court's denial of this claim was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that:

1. The petition for writ of habeas corpus be DENIED WITH PREJUDICE; and
2. The Clerk of the Court be DIRECTED to enter Judgment for Respondent; and
3. A Certificate of Appealability be DENIED.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) court days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 6, 2011**             /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE